**2013-5056**

In The

# United States Court of Appeals

### For The Federal Circuit

## ESTES EXPRESS LINES,

*Plaintiff – Appellant,*

## v.

## UNITED STATES,

*Defendant – Appellee.*

**APPEAL FROM THE UNITED STATES COURT OF FEDERAL CLAIMS
IN CASE NO. 11-CV-0597, JUDGE FRANCIS M. ALLEGRA.**

————————————

## BRIEF OF APPELLANT

————————————

**Robert D. Moseley, Jr.**
**SMITH MOORE LEATHERWOOD, LLP**
**Post Office Box 87**
**Greenville, South Carolina  29602**
**(864) 242-6440**

*Counsel for Appellant*

Form 9

FORM 9.  Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Estes Express Lines _____ v. United States _____

No. 2013-5056

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
Appellant _____ certifies the following (use "None" if applicable; use extra sheets
if necessary):

1.      The full name of every party or amicus represented by me is:

Estes Express Lines, Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real
party in interest) represented by me is:

Not applicable.

3.      All parent corporations and any publicly held companies that own 10 percent or more
of the stock of the party or amicus curiae represented by me are:

Not applicable.

4. ☑  The names of all law firms and the partners or associates that appeared for the party
or amicus now represented by me in the trial court or agency or are expected to appear in this
court are:

Robert D. Moseley, Jr. of Smith Moore Leatherwood LLP.

_____

_____2/27/2013_____              _s/Robert D. Moseley, Jr._
Date                              Signature of counsel

                                 _Robert D. Moseley, Jr._
                                 Printed name of counsel

Please Note: All questions must be answered
cc: Daniel Brett Volk _____

124

i

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................................. i

TABLE OF CONTENTS ....................................................................................... ii

TABLE OF AUTHORITIES ................................................................................. iii

PRIOR OR RELATED APPEALS ......................................................................... v

JURISDICTIONAL STATEMENT ........................................................................ 1

STATEMENT OF THE ISSUES ............................................................................ 2

STATEMENT OF THE CASE ............................................................................... 3

STATEMENT OF FACTS ..................................................................................... 4

SUMMARY OF ARGUMENT .............................................................................. 6

STANDARD OF REVIEW .................................................................................... 7

ARGUMENT ........................................................................................................ 8

     I.    THE BILLS OF LADING ARE EVIDENCE OF PRIVITY BETWEEN ESTES AND THE GOVERNMENT ............................... 8

     II.    SALEM ACTED AS AGENT OF THE GOVERNMENT ................ 11

     III.    THE GOVERNMENT IS LIABLE UNDER 49 U.S.C. § 13706 ...... 14

CONCLUSION .................................................................................................... 17

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Burnell v. Butler Moving & Storage*,
   826 F. Supp. 65 (N.D.N.Y. 1993)....................................................................12

*Central Freight Lines v. The United States*,
   87 Fed. Cl. 104 (2009).....................................................................10, 11, 14

*Continental Illinois Nat'l Bank & Trust Co. v. United States*,
   81 F. Supp. 596 (Ct. Cl. 1949)......................................................................14

*Fikse & Co. v. United States*,
   23 Cl. Ct. 200 (1991) .................................................................................9, 14

*Great Northern Ry. Co. v. O'Connor*,
   232 U.S. 508 (1914)......................................................................................12

*Hedrick v. United States*,
   215 F.3d 1349 (Fed. Cir. 1999) ......................................................................7

*Louisville & N. R. Co. v. Central Iron & Coal Co.*,
   265 U.S. 59 (1924)......................................................................................8, 9

*Lyman v. Stuart Corporation*,
   1996 Minn. App. LEXIS 549 (Minn. Ct. App. 1996) ...................................10

*Nippon Fire & Marine Co., Ltd. v. Skyway Freight Systems, Inc.*,
   235 F.3d 53 (2d Cir. 2000) ...........................................................................13

*Norfolk Southern Ry. Co. v. Kirby*,
   543 U.S. 14 (2004)........................................................................................12

*O'Connor v. United States*,
   308 F.3d 123 (Fed. Cir. 2002) ........................................................................7

*Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*,
  513 F.3d 949 (9th Cir. 2008) ....................................................................8, 15

*S. Pac. Transp. Co. v. Commercial Metals Co.*,
  456 U.S. 336 (1982)...................................................................................8, 15

*United States v. Johnson Controls, Inc.*,
  713 F.2d 1541 (Fed. Cir. 1983) ............................................................11, 12

## STATUTES

28 U.S.C. § 1295 .....................................................................................................1

28 U.S.C. § 1491 .....................................................................................................1

49 U.S.C. § 13706 ..........................................................................................*passim*

## RULE

Fed. R. App. P. 4 ....................................................................................................1

## PRIOR OR RELATED APPEALS

None.

# JURISDICTIONAL STATEMENT

Appellant asserted subject matter jurisdiction in the Court of Federal Claims based upon 28 U.S.C. § 1491, and Appellee denied that subject matter jurisdiction existed. Jurisdiction in the Court of Appeals is based upon 28 U.S.C. § 1295, as an appeal from a final decision and judgment of the Court of Federal Claims entered January 15, 2013, disposing of all claims. Appellants' notice of appeal was timely filed on February 13, 2013, pursuant to Fed. R. App. P. 4.

## STATEMENT OF THE ISSUES

I.      DID THE COURT OF FEDERAL CLAIMS ERR IN FINDING LACK OF PRIVITY BETWEEN ESTES AND THE UNITED STATES IN SPITE OF THE PRESENCE OF THE BILLS OF LADING?

II.     DID THE COURT OF FEDERAL CLAIMS ERR IN FINDING THAT THE FREIGHT BROKER WAS NOT AN AGENT OF THE UNITED STATES?

III.    DID THE COURT OF FEDERAL CLAIMS ERR IN DECLINING TO EXTEND JURISDICTION UNDER 49 U.S.C. § 13706?

## STATEMENT OF THE CASE

Appellant Estes Express Lines ("Estes") originally filed this case in the United States District Court for the Middle District of North Carolina against the Marine Corp Exchange (hereinafter, the "Government") as well as the Navy Exchange and several non-governmental entities seeking to recover freight charges for freight transported by Estes on the Government's behalf.  Upon the consent of the parties, the case as to the Government was transferred to the Court of Federal Claims.  After the transfer, the Government filed a timely Motion to Dismiss, asserting lack of jurisdiction and failure to state a claim.  After briefing from both parties, the Court of Federal Claims held a telephonic oral argument.  Ultimately, the Court of Federal Claims granted the Government's Motion to Dismiss by Order dated January 15, 2013.  Upon entry of the final judgment, Estes timely appealed from the entry of judgment granting the Motion to Dismiss.

## STATEMENT OF FACTS

This appeal arises from a case filed by Estes to recover freight charges from the Government.  Estes is a duly licensed federal motor carrier.  [J.A. 13 & 134].  The Government, by and through the Marine Corps Exchange (the "MCX"), contracted with a freight broker, Salem Logistics ("Salem") to coordinate its logistics and communicate with motor carriers to carry the products and goods of various shippers to MCX locations around the country.  [J.A. 13-14 & 134].  Unlike most shipments that are arranged by the shipper or a broker from origin, the Government arranged for Salem to coordinate in-bound shipments.  [J.A. 135, 138, 140, 142, 144, & 146].  In other words, the Government was arranging for goods that it had purchased to be picked up at the seller's location and transported to the necessary MCX location.  *Id.*  Thus, while under the more typical arrangements, the shipper would sign the bill of lading at origin, here, the Government would sign at destination.  [J.A. 135, 139, 141, 143, 145, & 147].  In fact, for many of the shipments, the Government was both the shipper and consignee, with freight moving between MCX and Navy Exchange ("NCX") locations.  [J.A. 135].

At various times thereafter, including between June 2008 through February 2009, Salem, as an agent for the Government, arranged with Estes to carry specified loads for the Government.  [J.A. 13-14 & 134].  Under the bills of lading, various MCX locations were listed as the consignee, while various third parties

4

were listed as the shipper.   [J.A. 14 & 135].    At all times the charges were to be billed to MCX, care of Salem.  [J.A. 14 & 136].  Pursuant to such contracts, Estes invoiced MCX, care of Salem for payment of freight charges for loads carried by Estes for MCX, but Estes has not been paid on certain invoices by Salem, MCX, or any other party.  [J.A. 14 & 136].  There is no contract between Estes and Salem, and Estes handled these shipments as if it were a common carrier.  [J.A. 136].

## SUMMARY OF ARGUMENT

A bill of lading is the fundamental contract governing the rights and obligations of the parties to the bill of lading. Where, as here, the Government is a party to the bill of lading, it cannot rely on the Tucker Act to argue lack of jurisdiction, and effectively lack of liability, due to lack of privity.

Moreover, despite language in a contract between the Government and its broker, Salem, it is apparent that Salem was acting as an agent of the Government in procuring the services of Estes to haul freight.

Finally, jurisdiction is created by 49 U.S.C. § 13706 because the Government is not only the consignee, but it is also the owner of the freight and the party arranging for transportation.

Therefore, the decision of the Court of Federal Claims should be reversed and remanded to the Court of Federal Claims for discovery and trial.

## STANDARD OF REVIEW

"The Court of Federal Claims' decision to grant the government's motion to dismiss for lack of jurisdiction is a matter of law, which this court reviews de novo." *O'Connor v. United States*, 308 F.3d 1233, 1239 (Fed. Cir. 2002).  In conducting its review, the court "must accept the complaint's undisputed factual allegations as true and construe the facts in the light most favorable to the plaintiff." *Hedrick v. United States*, 215 F.3d 1349 (Fed. Cir. 1999).

# ARGUMENT

## I.    THE BILLS OF LADING ARE EVIDENCE OF PRIVITY BETWEEN ESTES AND THE GOVERNMENT.

The Court of Federal Claims held that there was no privity between Estes and the Government, and therefore, pursuant to the Tucker Act, the Government retained sovereign immunity and that the Court of Federal Claims had no jurisdiction.  [J.A. 6].  In so doing, the Court of Federal Claims pointed to the contract between the Government and Salem as evidence that Estes contracted with Salem, and not the Government. However, liability for freight charges is determined by the most fundamental contract to a transportation arrangement: namely, the bill of lading.  The bill of lading establishes the "default liability provisions" for freight charges among the parties to a transportation arrangement. *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949, 955 (9th Cir. 2008).

Absent a statement to the contrary, a bill of lading provides that, by default, the shipper or consignor remains primarily liable for the carrier's freight charges. *S. Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 343 (1982). Moreover, the owner or consignee of the goods is also generally liable for the freight charges. *Louisville & N. R. Co. v. Central Iron & Coal Co.*, 265 U.S. 59

(U.S. 1924).[1]  However, the terms of the bill of lading may vary the default rules.

*Louisville & N. R. Co.* at 67 (1924) ("To ascertain what contract was entered into we look primarily to the bills of lading, bearing in mind that the instrument serves both as a receipt and as a contract.").

In the instant case, the terms of the bill of lading provide that charges should be billed to:

> MARINE CORPS EXCHANGE
> C/O SALEM LOGISTICS
> 301 N. MAIN ST STE 2600
> WINSTON-SALEM, NC 27101
> United States of America

[J.A. 135, 138, 140, 142, 144, & 146].[2]  In fact, the Government's contract with Salem mandated that the above-referenced language appear in the bill of lading. [J.A. 99].  The effect of this language is to indicate that Marine Corps Exchange is a party to the bill of lading and liable for the freight charges.  The Government could have mandated that the freight charges be billed to Salem with no reference to the Marine Corps Exchange, but it did not do that.

---

[1] Estes recognizes that the rule as to consignees has been held not to apply when the United States Government is the consignee.  *Fikse & Co. v. United States*, 23 Cl. Ct. 200 (1991).  However, Estes does not seek to hold the Government liable merely as consignee because here it was the party purchasing transport and the owner of the freight, not merely the recipient of freight (consignee).

[2] "C/O" and "%" in front of "Salem Logistics" are used interchangeably throughout the bills of lading.

The use of "C/O" or "%" merely reflects that the invoice should be mailed to the Government's agent, Salem. *See e.g.*, *Lyman v. Stuart Corporation*, 1996 Minn. App. LEXIS 549 (Minn. Ct. App. 1996) (unpublished) (interpreting an insurance contract the court held "[a] common sense reading shows that the comma and the '%' symbol mean the policy should be mailed 'in care of' [the insured's agent]," not that the agent itself was the named insured). The very use of the symbol "C/O" is evidence of the agency of Salem so as to provide jurisdiction for this Court to retain jurisdiction over this case.

The Court of Federal Claims purports to rely on a more recent case decided by it, *Central Freight Lines v. The United States*, 87 Fed. Cl. 104 (2009). However, *Central Freight Lines* can easily be distinguished from the facts at issue here. In *Central Freight Lines*, the Government issued bills of lading to a company named Dispatch Services ("Dispatch"). *Id.* at 107. Dispatch was listed as the carrier on these bills of lading. *Id.* Dispatch subsequently issued separate bills of lading on which the plaintiff, Central Freight Lines, was listed as the carrier. *Id.* The Court of Federal Claims held that there was no privity of contract between the carrier and the Government because there were dual bills of lading, and the plaintiff was not the carrier on the bills of lading issued by the Government. *Id.* at 108 - 109. In the facts at issue here, there is only <u>one</u> bill of lading per freight load, and the Government expressly agreed to be liable for

freight charges therein.  Moreover, unlike *Central Freight Lines*, in which Central and Dispatch had a contract (namely, the second bill of lading), *Id.* at 107, here, Estes and Salem had no contract.  The only contract to which Estes was a party are the Bills of Lading, and Salem was merely listed as a pay agent on the bills of lading, with the Government being listed as the "bill to" party.

The notation that the invoices should be sent to the Government's agent to receive and process payments does not absolve the Government of liability for the freight charges for which it expressly agreed to be liable under the terms of the bills of lading where the charges are to be billed to the Government.  The express language of the bill of lading provides the privity of contract necessary for this Court to retain jurisdiction over this matter.

## II.    SALEM ACTED AS AGENT OF THE GOVERNMENT.

The Court of Federal Claims further rejected the assertion of Estes that Salem was acting as an agent for the Government.  [J.A. 7].  However, as a broker, Salem was acting as the agent for the Government.  The Court of Federal Claims pointed to *United States v. Johnson Controls, Inc.*, 713 F.2d 1541 (Fed. Cir. 1983) that sets forth the elements of "deemed privity" whereby an agent contracts on behalf of the Government as its principal as follows: "(1) [the entity it contracted with] was acting as a purchasing agent for the government, (2) the agency relationship between the government and the prime contractor was established by

clear contractual consent, and (3) the contract stated that the government would be directly liable to the vendors for the purchase price." *Id.* at 1551. These elements have been met.

First, Salem was acting as a purchasing agent for the government. As reflected by the clear terms of the bills of lading and by its contract with the Government, Salem was the agent to procure transportation services for the MCX. Second, the relationship between Salem and MCX was established by a 51 page contract, and the bills of lading prepared as required by the Government, reflect the agency relationship of Salem. Finally, the bills of lading clearly state that MCX is the "bill to" party. Representatives of the MCX signed no less than 364 of these shipping documents clearly listing MCX as the "bill to" party.

If the broker did not have the authority to arrange for the shipments, then no carrier would agree to transport them. [J.A. 135]. A carrier has the right to assume that the entity presenting the goods for shipment has the authority to ship them and agree upon the terms of the shipment. *Great Northern Ry. Co. v. O'Connor*, 232 U.S. 508, 514, 515, 34 S. Ct. 380, 58 L. Ed. 703 (1914); *see also Norfolk Southern Ry. Co. v. Kirby*, 543 U.S. 14, 34, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004) (applying *Great Northern* to a maritime action); *Burnell v. Butler Moving & Storage*, 826 F. Supp. 65, 68-69 (N.D.N.Y. 1993) (applying *Great Northern* and holding that carrier had the right to assume that a freight forwarder had the

authority to agree to the terms of the shipment with a motor carrier); *Nippon Fire & Marine Co., Ltd. v. Skyway Freight Systems, Inc.*, 235 F.3d 53, 61 (2d Cir. 2000) (shipper who contracted with an air carrier for the shipment of goods was bound by the terms of the contract that air carrier subsequently entered into with subcontracted secondary air carriers).   Therefore, Estes properly assumed that Salem had authority to negotiate for the Government as its agent.

The Court of Federal Claims relied on a self-serving clause in the Government's contract with Salem in holding that Salem was not an agent of the government. [J.A. 7].  The cited clause states that Salem will not represent itself to be an agent of the Government.  [J.A. 81].  However, Estes was not a party to that contract, nor has there been any evidence that it was even aware of the terms of that contract.  The sole contracts at issue in which Estes was a party are the bills of lading.  This Court has previously held that self-serving language in a contract purporting to limit the relationships of the parties is not dispositive of the issue:

> It is true that the specifications provide that nothing in the contract documents shall create a contractual relation between the subcontractor and the Government. But this is somewhat like the truant boy who, while admitting that he took, roasted and ate the chicken without the owner's permission, pleaded that he had no intention of depriving the owner of it – he didn't even know the owner. A mere statement that a contractual relation did not exist would be ineffective if all the elements of such a relation were otherwise present.

*Continental Illinois Nat'l Bank & Trust Co. v. United States*, 81 F. Supp. 596, 598 (Ct. Cl. 1949). The Government's use of Salem as a broker and payment processor is more than sufficient to overcome the Government's self-serving language in its contract with Salem. Therefore, despite the language of the contract between the Government and Salem, the relationship between the parties strongly suggests that Salem was acting as an agent of the Government.

### III.    THE GOVERNMENT IS LIABLE UNDER 49 U.S.C. § 13706.

Section 13706 provides for liability for freight charges for the recipient of freight. Here, the Marine Corps Exchange was the title holder to and recipient of the freight, and would be bound to pay the freight charges.

However, the Trial Court held that the statute does not "create liability in the consignee in the face of an express contractual allocation" of freight charges to the contrary. [J.A. 8]. What the Court overlooked was that the contractual allocation was in the contract between Salem and MCX and not Estes. The Estes Bill of Lading allocated the obligation to pay freight charges to MCX c/o Salem so that section 13706 remained in play. To date, this Court has not addressed the applicability of section 13706 to the government as the consignee.[3]

---

[3] However, Estes must acknowledge that the Court of Claims has decided this issue adversely to Estes' position. *Fikse & Co. v. United States*, 23 Cl. Ct. 200, 203 (1991); *Cent. Freight Lines, Inc. v. United States*, 87 Fed. Cl. 104, 112 (2009).

Section 13706 of Title 49 provides:

> (a) Liability of consignee.—Liability for payment of rates for transportation for a shipment of property by a shipper or consignor to a consignee other than the shipper or consignor, is determined under this section when the transportation is provided by motor carrier under this part. When the shipper or consignor instructs the carrier transporting the property to deliver it to a consignee that is an agent only, not having beneficial title to the property, the consignee is liable for rates billed at the time of delivery for which the consignee is otherwise liable, but not for additional rates that may be found to be due after delivery if the consignee gives written notice to the delivering carrier before delivery of the property –
>
>> (1) of the agency and absence of beneficial title; and
>>
>> (2) of the name and address of the beneficial owner of the property if it is reconsigned or diverted to a place other than the place specified in the original bill of lading.
>
> (b) Liability of beneficial owner.—When the consignee is liable only for rates billed at the time of delivery under subsection (a), the shipper or consignor, or, if the property is reconsigned or diverted, the beneficial owner is liable for those additional rates regardless of the bill of the lading or contract under which the property was transported. The beneficial owner is liable for all rates when the property is reconsigned or diverted by an agent but is refused or abandoned at its ultimate destination if the agent gave the carrier in the reconsignment or diversion order a notice of agency and the name and address of the beneficial owner. A consignee giving the carrier erroneous information about the identity of the beneficial owner of the property is liable for the additional rates.

This language, it would seem, creates a money mandating obligation for payment of the freight charges in this case as in cases involving private parties. *S. Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 343 (1982); *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949, 955 (9th Cir. 2008).

Here, Estes does not seek to hold the government liable for the payment of freight merely as consignee – MCX was the owner of the freight and also the party arranging for transportation.   Accordingly, this Court should find that § 13706 creates the independent obligation of the MCX to pay the freight charges.

## CONCLUSION

For the reasons set forth above, Estes requests that the judgment of the Court of Federal Claims be reversed and that the case be remanded for the case to be heard on its merits.

Respectfully submitted,

/s/ Robert D. Moseley, Jr.
Robert D. Moseley Jr.
SMITH MOORE LEATHERWOOD LLP
Post Office Box 87
Greenville, SC 29602
Telephone: (864) 242-6440
Facsimile:  (864) 240-2475
E-mail: rob.moseley@smithmoorelaw.com

Attorneys for Appellants

# ADDENDUM

# In the United States Court of Federal Claims

**No. 11-597 C**

**ESTES EXPRESS LINES,**

                                                                                **JUDGMENT**

   **v.**

**THE UNITED STATES**

Pursuant to the court's Opinion, filed January 15, 2013, granting defendant's motion to dismiss under RCFC 12(b)(1),

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that the complaint is dismissed for lack of jurisdiction.

                                        Hazel C. Keahey
                                        Clerk of Court

**January 15, 2013**                    By:     s/Lisa L. Reyes

                                        Deputy Clerk

NOTE: As to appeal, 60 days from this date, see RCFC 58.1, re number of copies and listing of all plaintiffs.  Filing fee is $455.00.

# In the United States Court of Federal Claims

No. 11-597C

(Filed: January 15, 2013)

_____

|  |  |
|---|---|
| ESTES EXPRESS LINES, | * |
| | * Contract case; Motion to dismiss under RCFC |
| Plaintiff, | * 12(b)(1) and 12(b)(6); Standard of review; |
| | * Subcontractor lacked privity of contract with |
| v. | * the United States; Contractor was not agent of |
| | * Federal agency; 49 U.S.C. § 13706; Case |
| THE UNITED STATES, | * dismissed for lack of jurisdiction. |
| | * |
| Defendant. | * |
| | * |
| | * |

_____

**OPINION**

_____

*Robert D. Moseley, Jr.*, Smith Moore Leatherwood LLP, Greenville, SC, for plaintiff.

*Daniel B. Volk*, Civil Division, United States Depart of Justice, with whom was Acting Assistant Attorney General *Stuart F. Delery*, for defendant.

**ALLEGRA, Judge:**

This contract case is before the court on defendant's motion to dismiss the complaint pursuant to RCFC 12(b)(1) or, alternatively, RCFC 12(b)(6). The plaintiff, Estes Express Lines, Inc. (Estes Express or plaintiff), an interstate motor carrier, claims that an arm of the United States Department of Defense breached contracts for transportation services by failing to pay it $147,645.33 in charges. Having carefully considered the parties' claims, the court hereby **GRANTS** defendant's motion under RCFC 12(b)(1), finding that there was no privity of contract between plaintiff and the United States upon which to predicate jurisdiction here.

## I.     BACKGROUND[1]

The facts required here are simple and few.

Estes Express is a duly-licensed federal motor carrier, based in Richmond, Virginia.  The Marine Corps Exchange (MCX) is a division of the United States Marine Corps Community Services (MCCS).

On October 31, 2007, MCCS awarded contract number H0107-D-0005 to Salem Logistics, Inc. (Salem) to coordinate its logistics and communicate with motor carriers to carry the products and goods of various shippers to MCX locations throughout the United States.  Salem was contracted to provide freight management services with respect to, and in support of, MCCS's and MCX's in-bound shipments (*i.e.*, to ensure that they were picked up at a seller's location and delivered to an MCX location).  The contract required Salem to "make payment to the commercial transportation carriers for services rendered to move products covered by [the contract], in accordance with terms and conditions negotiated between the two parties."  Salem was then to "invoice the MCCS/MCX destinations for actual transportation expenses and the management fees . . . for the shipped merchandise that was successfully delivered to the correct MCCS/MCX destination."[2]  The contract between MCCS and Salem also indicated that Salem "shall not represent itself to be an agent or representative of MR, MCCS or any other agency or instrumentality of the United States."  The contract went on to state that "[a]ny subcontractor used in connection with this contract is the agent of [Salem] and not the agent of MR and MCCS."

Between June 2008 and February 2009, Salem arranged for Estes Express to carry various shipments for MCX.  Though a written contract did not govern the relationship between Estes Express and Salem, the shipments moved pursuant to the former's "common carrier tariff," and each shipment was identified by:  (i) a bill of lading;[3] (ii) a freight bill; and (iii) a delivery receipt.

---

[1]  These facts are drawn largely from plaintiff's complaint, and, for purposes of this motion, are assumed to be correct.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Additional details are drawn from documents filed by the parties that are referenced in plaintiff's complaint and integral to the claims made therein.  *See Normandy Apartments, Ltd. v. United States*, 100 Fed. Cl. 247, 255 n.10 (2011).

[2]  The contract indicated that Salem could request "reimbursement for transportation carrier charges incurred moving MCCS/MCX shipments as frequently as weekly."

[3]  Commercial bills of lading such as the ones at issue here are also referred to as "straight bills of lading" in order to distinguish them from "government bills of lading."  Government bills of lading are contracts between the government and carrier and establish

Under the bills of lading, various MCX locations were listed as "consignee," while various third parties (the sellers) were listed as shipper. In some cases, goods were moved from a Navy Exchange (NEX) location to an MCX location, rather than from a third-party service provider to MCX. In the latter cases, government entities were listed as both consignee and shipper. The contract between Salem and MCCS specified that the charges were to be billed, pursuant to the shipping documents, to "Marine Corps Exchange C/O Salem Logistics" – and the bills of lading reflected this.

Plaintiff filed, as exhibits to its opposition to defendant's motion to dismiss, certain exemplar shipping documents. For example, a "Bill of Lading" dated October 30, 2008, contains the following information. The "Ship From" box indicates that the shipper is "MJ SOFFE COMPANY" and lists that company's address. The "Ship To" box indicates that the destination for the shipment is "MCCS 05100 – NEW MAIN STORE" and lists the address for that location. In a box labeled "Third Party Freight Charges Bill To," the bill of lading indicates "MARINE CORPS EXCHANGE C/O SALEM LOGISTICS" and provides Salem's address. The form contains other information about the items being shipped. At the bottom, the bill of lading is signed by the "Shipper" and by the "Carrier." On this particular bill of lading, the individual that signed for the "Carrier" indicated that he was a representative of Estes Express. It is unclear on the face of the document which entity the individual who signed for "Shipper" represented.

With respect to the same shipment, plaintiff also included an "Original Freight Bill" and a "Delivery Receipt," both of which indicate that they are "Estes Express Lines" documents because they have the Estes Express logo in the upper-left corners. These documents, like the bill of lading, are dated October 30, 2008. The freight bill indicates that "MCCS 05100 – NEW MAIN STORE" is the "Consignee" and that "M J SOFFE COMPANY" is the "Shipper." The freight bill also indicates: "Bill Charges To . . . MARINE CORPS EXCHANGE % SALEM LOGISTICS" and lists Salem's address. Finally, the freight bill contains a listing of the charges associated with the shipment. The delivery receipt lists the same "Consignee" and "Shipper" as the freight bill and contains information about the items being shipped. Unlike the freight bill, the delivery receipt indicates: "Bill Charges To . . . MARINE CORPS EXCHANGE" and contains Salem's city, state, and zip code, but not its street address or, indeed, mention of Salem at all. The delivery receipt is signed by a representative of the MCX location to which the goods were delivered (and by some other unidentified individual).

Each shipment arranged by Salem to be shipped by Estes Express was accepted by the consignee – MCX – without exception, and no claims arising out of the carriage of the specified loads were made against Estes Express. Following the shipments, Estes Express invoiced "MCX, care of Salem" for payment of freight charges. However, Estes Express has not been paid on certain invoices by Salem, MCCS, MCX, NEX, or any other entity.

---

privity of contract. *See, e.g.*, *Cent. Transp. Int'l, Inc. v. United States*, 63 Fed. Cl. 336, 338 (2004).

Estes Express invoiced Salem for freight charges with regard to shipments for MCX in the total principal amount of $66,283.68. When combined with a loss discount of $110,292.93 per the terms and conditions of Estes Express' "common carrier tariff," the total amount due to Estes Express was $176,576.61.[4] MCX subsequently paid Estes Express $28,931.28, representing monies owed for which MCX had not yet paid Salem,[5] leaving a total amount due of $147,645.33.[6] MCX refuses to pay Estes Express any amount owed for which MCX claims it paid Salem.

On February 3, 2010, Estes Express filed suit against Salem and other defendants, including government entities, in the United States District Court for the Middle District of North Carolina. Complaint, *Estes Express Lines v. Salem Logistics, Inc.*, No. 10-102 (M.D.N.C. Feb. 3, 2010). On July 8, 2011, the District Court entered an order transferring the case to this court. Order, *Estes Express Lines v. Salem Logistics, Inc.*, No. 10-102 (M.D.N.C. July 8, 2011). Plaintiff filed its transfer complaint in this case on October 17, 2011. On January 6, 2012, defendant filed a motion to dismiss pursuant to RCFC 12(b)(1) and (6), and, on March 26, 2012, briefing was complete on that motion. On September 27, 2012, the court held a telephonic oral argument on defendant's motion.

## II.  DISCUSSION

Deciding a motion to dismiss "starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997); *see also Twombly*, 550 U.S. at 555. The plaintiff must establish that the court has subject matter jurisdiction over its claims. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *Normandy Apartments*, 100 Fed. Cl. at 251. The court may look beyond the pleadings and "inquire into jurisdictional facts" to determine whether jurisdiction exists. *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991). RCFC 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." But, this provision "does not apply to a motion made

---

[4] Under "loss-of-discount" tariff rules, certain allowances and discounts are lost if the tariff charges are not paid within a certain number of days after the shipment. The loss of these discounts has the effect of increasing the amount owed for shipment.

[5] In February 2009, MCCS terminated its contract with Salem after it became aware that Salem was not remitting payment to its carriers. At that time, MCX paid Estes Express directly for invoices for which it had not already paid Salem.

[6] Of the total amount plaintiff claims is due, NEX was the shipper on shipments for which the total principal amount of the freight charges was $12,242.02. When combined with a loss discount of $36,147.83, the total amount owed with respect to these shipments is $48,389.85.

under Rule 12(b)(1) to dismiss for lack of jurisdiction over the subject matter," under which the court undoubtedly may "address matters outside the pleadings." *Reed Island-MLC, Inc. v. United States*, 67 Fed. Cl. 27, 32 (2005) (citing *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1383 (Fed. Cir. 2002)); *see also Petro–Hunt, L.L.C. v. United States*, 90 Fed. Cl. 51, 58 (2009).

Defendant argues, under RCFC 12(b)(1), that this court lacks jurisdiction over plaintiff's complaint because the contract on which plaintiff predicates its case was not with the United States or an agency thereof. Defendant further contends that this lack of privity is controlling despite plaintiff's invocation of 49 U.S.C. § 13706, which deals with the liability of consignees for shipping charges incurred by a common carrier. Plaintiff demurs to these dismissal arguments, making various contentions to which the court will now turn.

"[F]or the government to be sued on a contract pursuant to the Tucker Act, there must be privity of contract between the plaintiff and the United States." *Chancellor Manor v. United States*, 331 F.3d 891, 899 (Fed. Cir. 2003); *see also Anderson v. United States*, 344 F.3d 1343, 1351 (Fed. Cir. 2003). "This is so because the doctrine of sovereign immunity precludes a suit against the United States without its consent and because, under the Tucker Act, the United States has '"consent[ed] to be sued only by those with whom it has privity of contract."'" *Normandy Apartments*, 100 Fed. Cl. at 254 (quoting *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1263 (Fed. Cir. 2005) (quoting *Erickson Air Crane Co. of Wash., Inc. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984))); *see also First Annapolis Bancorp., Inc. v. United States*, 644 F.3d 1367, 1373 (Fed. Cir. 2011), *cert. denied*, 132 S. Ct. 2102 (2012). Accordingly, "[t]he effect of finding privity of contract between a party and the United States is to find a waiver of sovereign immunity." *Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998), *cert. denied*, *sub nom., Sherman Park Apartments v. United States*, 528 U.S. 820 (1999). Conversely, a finding lack of privity deprives this court of jurisdiction. *See First Annapolis Bancorp*, 644 F.3d at 1373 ("The lack of privity impacts the lack of waiver of sovereign immunity, which is available pursuant to the Tucker Act."); *S. Cal. Fed. Sav. & Loan Ass'n v. United States*, 422 F.3d 1319, 1328 n.3 (Fed. Cir. 2005), *cert. denied, sub nom., Martin v. United States*, 548 U.S. 904 (2006) ("[S]tanding and privity of contract with the government are questions of subject matter jurisdiction."); *see also Katz v. Cisneros*, 16 F.3d 1204, 1210 (Fed. Cir. 1994) ("Absent privity between [plaintiff] and the government, there is no case.").

Contrary to plaintiff's claims, there was no direct privity of contract between it and the United States. It was Salem, and not Estes Express, that had a contractual relationship with defendant; Estes Express' contractual relationship was with Salem only, as a subcontractor. This relationship is plainly reflected in the contract that defendant had with Salem, which described the nature of its services and the invoicing mechanisms that would be employed in reimbursing Salem for the amounts that it paid to its carriers, such as Estes Express. Those provisions, and others, made clear that Salem, and not defendant, would be directly liable to the carriers for the transportation charges incurred. *Compare United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1551 (Fed. Cir. 1983) (indicating that a subcontractor attempting to demonstrate privity with the government must show, *inter alia*, that "the contract stated that the government would be directly liable to the vendors for the purchase price"); *see also Nat'l Leased Hous. Ass'n v.*

- 5 -

*United States*, 105 F.3d 1423, 1435-36 (Fed. Cir. 1997); *US W. Commc'ns Servs., Inc. v. United States*, 940 F.2d 622, 629 (Fed. Cir. 1991). Nothing in the bills of lading that plaintiff has introduced into the record contradicts this notion. Rather, the descriptions and signatories on those bills are consistent with the notion that Salem, and not MCX or MCCS, had a carrier contract with Estes Express. As such, there is little to distinguish this case from several others in which this court has dismissed the contract claims of freight subcontractors because of a lack of privity. *See Cent. Freight Lines, Inc. v. United States*, 87 Fed. Cl. 104, 107, 109 (2009) ("While the plaintiff[-subcontractor] has supplied this court with over 1,300 [straight bills of lading] between itself and [the government contractor], the [straight bills of lading] fail to establish a contractual relationship between the government and [plaintiff]."); *Cent. Transp.*, 63 Fed. Cl. at 338-39 (holding that the straight bills of lading at issue did "not establish contractual privity with the Government, since the Government was not a party to those bills of lading").[7]

Undaunted, Estes Express contends that privity existed between it and the United States for two other reasons. First, plaintiff asserts that the United States was a party to the contract that Salem signed with it because Salem signed that contract as the government's agent. To be sure, the Federal Circuit has recognized that privity may be established under such an agency or "deemed privity" theory. *See, e.g., Johnson Controls*, 713 F.2d at 1551; *see also RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1139 (6th Cir. 1996). But, the contract between Salem and MCX thoroughly rebuffs the notion that such an agency relationship existed here, as it flatly indicated that Salem "shall not represent itself to be an agent or representative of MR, MCCS or any other agency or instrumentality of the United States." That contract went on to emphasize that "[a]ny subcontractor used in connection with this contract is the agent of [Salem] and not the agent of MR and MCCS." In *Johnson Controls*, similar clauses were viewed as "an important, if not determinative, factor" indicating that a contractual relationship between a subcontractor and the United States did not exist. *Johnson Controls*, 713 F.2d at 1553; *see also RMI Titanium*, 78 F.3d at 1139-40. In sum, even drawing all reasonable inferences in favor of the plaintiff, Estes Express has failed to demonstrate that its agency argument amounts to anything. *See Twombly*, 550 U.S. at 555; *see also YRC*, 104 Fed. Cl. at 367-68; *Cent. Freight Lines*, 87 Fed. Cl. at 109.

Finally, at least in its complaint (and at oral argument), Estes Express attempts to engraft its claim onto 49 U.S.C. § 13706 – asserting either that the statute establishes the requisite privity here or independently establishes a basis for recovery here. Neither is the case. Section 13706 "governs the liability of consignees for shipping charges incurred by a common carrier." *Cent.*

---

[7] *See also YRC, Inc. v. United States*, 104 Fed. Cl. 360, 367 (2010) (interpreting similar MCCS bills of lading as not evidencing a "mutual intent to contract"); *Fikse & Co. v. United States*, 23 Cl. Ct. 200, 203 (1991) ("[T]he bill of lading merely defines the terms under which the goods are shipped. The fact that the consignee must take notice of rate and payment terms for the delivery does not mean that a contractual obligation springs up in the consignee to pay shipping charges in the absence of an agreement by it to do so.").

*Freight Lines*, 87 Fed. Cl. at 111.[8]  That statute, however, does not "create liability in the consignee in the face of an express contractual allocation elsewhere of freight charges." *Fikse*, 23 Cl. Ct. at 204; *see also In re Roll Form Prods., Inc.*, 662 F.2d 150, 154 (2d Cir. 1981) ("The [Interstate Commerce] Act . . . was not intended to 'fashion a sword' to insure collection by carriers of freight charges [nor] . . . to impose an absolute liability upon consignees for freight charges.").  As such, this court has twice rejected the notion that this statute either independently provides this court with jurisdiction, or does so in conjunction with the Tucker Act.  *Cent. Freight Lines,* 87 Fed. Cl. at 112; *Cent. Transp.*, 63 Fed. Cl. at 340 & n.10.  And the court sees no reason – certainly nothing off-handedly supplied by plaintiff – to depart from the holdings in these well-reasoned cases.

---

[8]  Section 13706 of Title 49 provides:

(a)  Liability of consignee.—Liability for payment of rates for transportation for a shipment of property by a shipper or consignor to a consignee other than the shipper or consignor, is determined under this section when the transportation is provided by motor carrier under this part.  When the shipper or consignor instructs the carrier transporting the property to deliver it to a consignee that is an agent only, not having beneficial title to the property, the consignee is liable for rates billed at the time of delivery for which the consignee is otherwise liable, but not for additional rates that may be found to be due after delivery if the consignee gives written notice to the delivering carrier before delivery of the property –

(1) of the agency and absence of beneficial title; and

(2) of the name and address of the beneficial owner of the property if it is reconsigned or diverted to a place other than the place specified in the original bill of lading.

(b)  Liability of beneficial owner.—When the consignee is liable only for rates billed at the time of delivery under subsection (a), the shipper or consignor, or, if the property is reconsigned or diverted, the beneficial owner is liable for those additional rates regardless of the bill of the lading or contract under which the property was transported.  The beneficial owner is liable for all rates when the property is reconsigned or diverted by an agent but is refused or abandoned at its ultimate destination if the agent gave the carrier in the reconsignment or diversion order a notice of agency and the name and address of the beneficial owner.  A consignee giving the carrier erroneous information about the identity of the beneficial owner of the property is liable for the additional rates.

49 U.S.C. § 13706.

### III.    CONCLUSION

The court will not gild the lily.  Based on the foregoing, the court hereby **GRANTS** defendant's motion to dismiss this case under RCFC 12(b)(1) for lack of jurisdiction.  The Clerk is hereby ordered to dismiss the complaint.

**IT IS SO ORDERED.**

s/Francis M. Allegra
Francis M. Allegra
Judge

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 16th day of April, 2013, I caused this Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Daniel Brett Volk
> Department of Justice
> Commercial Litigation Branch, Civil Division
> Post Office Box 480
> Ben Franklin Station
> Washington, DC 20044
> (202) 353-7955
>
> *Counsel for Appellee*

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the Brief of Appellant will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

/s/ Robert D. Moseley, Jr.
*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*3,119*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: <u>April 16, 2013</u>          <u>/s/ Robert D. Moseley, Jr.          </u>
                                          *Counsel for Appellant*