2013-5056

---

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

ESTES EXPRESS LINES,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

---

Appeal from the United States Court of Federal Claims
in No. 11-CV-0597, Judge Francis M. Allegra

---

**BRIEF OF APPELLEE, UNITED STATES**

STUART F. DELERY
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARTIN F. HOCKEY, Jr.
Assistant Director

DANIEL B. VOLK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 353-7955

May 31, 2013                    Attorneys for Appellee

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF RELATED CASES ................................................ vii

STATEMENT OF THE ISSUES ...................................................... 1

STATEMENT OF THE CASE ........................................................... 2

    I.    Nature Of The Case ........................................................... 2

    II.    Statement Of Facts And Procedural History ........................ 3

SUMMARY OF ARGUMENT ......................................................... 6

ARGUMENT .................................................................................... 7

    I.    Standard Of Review ............................................................ 7

    II.    The Jurisdiction Of The Court Of Federal Claims ................ 8

    III.    Estes Cannot Establish Privity Of Contract With The
United States ...................................................................... 9

    IV.    Salem Did Not Act As The Government's Purchasing Agent ............ 14

    V.    49 U.S.C. § 13706 Does Not Provide A Basis For Jurisdiction ......... 18

        A.    Provisions Of The ICA Cannot Be Paired With The Tucker
Act's Waiver of Sovereign Immunity ........................................ 19

        B.    49 U.S.C. § 13706 Is Not Money Mandating ........................... 22

CONCLUSION ................................................................................ 29

# TABLE OF AUTHORITIES

## CASES

*Anderson v. United States,*
  344 F.3d 1343 (Fed. Cir. 2003) ........................................................9, 10

*Blueport Co. v. United States,*
  533 F.3d 1374 (Fed. Cir. 2008) ...........................................................23

*Cent. Freight Lines, Inc. v. United States,*
  87 Fed. Cl. 104 (2009)........................................................... 13, 14, 22

*Cent. Transp. Int'l, Inc. v. United States,*
  63 Fed. Cl. 336 (2004)........................................................... 13, 15, 22

*Cienega Gardens v. United States,*
  194 F.3d 1231 (Fed. Cir. 1998) ..............................................................9

*Continental Illinois National Bank & Trust Co. v. United States,*
  81 F. Supp. 596 (Ct. Cl. 1949) ............................................... 16, 17, 18

*DaimlerChrysler Corp. v. United States,*
  442 F.3d 1313 (Fed. Cir. 2006) ...........................................................10

*Dalton v. Sherwood Van Lines, Inc.,*
  50 F.3d 1014 (Fed. Cir. 1995) .............................................................20

*Engage Learning, Inc. v. Salazar,*
  660 F.3d 1346 (Fed. Cir. 2011) ...........................................................10

*Erickson Air Crane Co. v. United States,*
  731 F.2d 810 (Fed. Cir. 1984) ...............................................................6

*Estes Express Lines v. United States,*
  108 Fed. Cl. 416 (2013)............................................................. passim

*Fed. Crop Ins. Corp. v. Merrill,*
  332 U.S. 380 (1947) ...............................................................................16

*Fikse & Co. v. United States*,
    23 Cl. Ct. 200 (1991) ................................................................................ 13, 22

*Fisher v. United States*,
    402 F.3d 1167 (Fed. Cir. 2005) ...............................................................9

*Greenlee Cnty., Ariz. v. United States*,
    487 F.3d 871 (Fed. Cir. 2007) ...............................................................23

*H. Landau & Co. v. United States*,
    886 F.2d 322 (Fed. Cir. 1989) ...............................................................16

*Henke v. United States*,
    60 F.3d 795 (Fed. Cir. 1995) .................................................................7

*In re Roll Form Products, Inc.*,
    662 F.2d 150 (2d Cir. 1981) ..................................................................28

*Inter-Coastal Xpress, Inc. v. United States*,
    296 F.3d 1357 (Fed. Cir. 2002) ...................................................... 20, 21

*Jan's Helicopter Serv. v. FAA*,
    525 F.3d 1299 (Fed. Cir. 2008) .............................................................23

*Loveladies Harbor, Inc. v. United States*,
    27 F.3d 1545 (Fed. Cir. 1994) ...............................................................9

*M. Maropakis Carpentry, Inc. v. United States*,
    609 F.3d 1323 (Fed. Cir. 2010) .............................................................7

*McNutt v. Gen. Motors Acceptance Corp. of Ind.*,
    298 U.S. 178 (1936) ..............................................................................7

*Metz v. United States*,
    466 F.3d 991 (Fed. Cir. 2006) ...............................................................8

*Oak Harbor Freight Lines, Inc. v. Sears Roebuck, & Co.*,
    513 F.3d 949 (9th Cir. 2008) .................................................................25

*Ransom v. United States,*
    900 F.2d 242 (Fed. Cir. 1990) ............................................................10

*Reynolds v. Army & Air Force Exch. Serv.,*
    846 F.2d 746 (Fed. Cir. 1988) ............................................................7

*Rocovich v. United States,*
    933 F.2d 991 (Fed. Cir. 1991) ............................................................8

*S. Pac. Transp. Co. v. Commercial Metals Co.,*
    456 U.S. 336 (1982) ............................................................25

*Severin v. United States,*
    99 Ct. Cl. 435 (1943) ............................................................17

*Spagnola v. Stockman,*
    732 F.2d 908 (Fed. Cir. 1984) ............................................................23

*Sullivan v. United States,*
    625 F.3d 1378 (Fed. Cir. 2010) ............................................................9

*Thompson v. United States,*
    103 Fed. Cl. 16 (2011) ............................................................10

*United States v. Bormes,*
    133 S. Ct. 12 (2012) ............................................................ passim

*United States v. Johnson Controls, Inc.,*
    713 F.2d 1541 (Fed. Cir. 1983) ............................................................ passim

*United States v. King,*
    395 U.S. 1 (1969) ............................................................26

*United States v. Mitchell,*
    463 U.S. 206 (1983) ............................................................18

*United States v. Sherwood,*
    312 U.S. 584 (1941) ............................................................8

*United States v. White Mountain Apache Tribe*,
  537 U.S. 465 (2003) .............................................................................. 20, 22, 23

*YRC, Inc. v. United States*,
  104 Fed. Cl. 360 (Fed. Cl. 2010) ................................................................. 12, 13

## STATUTES AND REGULATIONS

28 U.S.C. § 1491 ............................................................................. passim

31 U.S.C. § 3726 ......................................................................................21

49 U.S.C. § 13706 .......................................................................... passim

49 U.S.C. § 14705 ....................................................................................20

41 C.F.R. § 102-117.30 .............................................................................21

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Federal Circuit Rule 47.5, appellee's counsel states that he is not aware of any other appeal in or from this action that previously was before this Court or any other appellate court under the same or similar title.  Appellee's counsel is unaware of any case pending in this or any other court that may directly affect or be affected by this Court's decision in this appeal.

BRIEF OF APPELLEE, UNITED STATES

2013-5056

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ESTES EXPRESS LINES,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims
in No. 11-CV-0597, Judge Francis M. Allegra

## STATEMENT OF THE ISSUES

1.      Whether the United States Court of Federal Claims correctly determined that plaintiff-appellant, Estes Express Lines, was not in privity of contract with defendant-appellee, the United States.

2.      Whether the trial court correctly determined that Estes cannot establish "deemed privity" on the theory that Salem Logistics, Inc. acted as a purchasing agent for the United States.

3.      Whether the trial court correctly determined that 49 U.S.C. § 13706 does not provide an independent jurisdictional basis under the Tucker Act, 28

U.S.C. § 1491.

## STATEMENT OF THE CASE

### I.     Nature Of The Case

In 2007, Marine Corps Community Services (MCCS) contracted with Salem Logistics, Inc. (Salem) to provide freight management and transportation services. JA48.  Salem, in turn, contracted with Estes Express Lines (Estes), among other carriers, to carry loads for MCCS activities.  JA14.

In 2009, MCCS became aware that Salem was not paying its carriers, and MCCS terminated its contract with Salem.  JA49.  Estes alleges that it was not paid for some of the loads it contracted with Salem to transport for MCCS.  JA14. Although, after discontinuing payments to Salem, MCCS paid Estes directly for loads for which MCCS had not yet paid Salem, MCCS refused to pay Estes for loads for which it had already made payment to Salem.  JA49.

Estes appeals from a decision by the Court of Federal Claims dismissing its complaint for lack of jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims.  *Estes Express Lines v. United States*, 108 Fed. Cl. 416 (2013).  Because Estes was not in privity of contract with the United States, and no other non-contractual basis exists for the trial court to exercise jurisdiction in this case, the trial court's decision should be affirmed.

## II.    Statement Of Facts And Procedural History

Contract No. H0107-D-0005 was awarded by MCCS, which includes the Marine Corps Exchanges (MCX), to Salem on October 31, 2007.  JA48, 52-117. Under this contract, Salem was to provide transportation and freight management services to certain MCCS activities.  JA53.  The contract required Salem to make payments to commercial transportation carriers for services rendered in accordance with agreements between Salem and the carrier.  JA49, 59-60.  MCCS activities were required to pay Salem when it invoiced them.  JA60.

Estes was one of the carriers that Salem contracted with to provide the transportation services called for under Salem's contract with MCCS.  JA14 (alleging, in paragraph 5 of the complaint, that "Salem contracted with Plaintiff to carry specified loads for MCX").  In January 2009, MCCS became aware that Salem was not paying its carriers as required.  JA49; *see also* JA121 ("Salem Logistics stopped paying Estes Express for the freight that was hauled for the benefit of the Federal Defendants").  In February 2009, MCCS terminated its contract with Salem for default.  JA49, 117.  MCCS made payments directly to Estes for invoices for which it had not already paid Salem, but refused to pay Estes for amounts already paid to Salem.  JA49, 119.

On February 3, 2010, Estes filed suit against Salem and other defendants, including Federal entities, in the United States District Court for the Middle

3

District of North Carolina.  JA29.  The United States moved to dismiss as to the

Federal defendants on a variety of grounds, including lack of privity of contract.

JA33, 44 ("Plaintiff has failed to establish privity of contract with either Federal

Defendant, so this lawsuit should be dismissed for lack of jurisdiction as to the

Federal Defendants.").  In response to the Government's motion to dismiss, Estes

stated that "this action should have been brought in the first instance in the Court

of Federal Claims and . . . . the claims against the Federal Defendants should be

transferred to the Court of Federal Claims . . . ."  JA120.  On July 8, 2011, the

district court ordered that Estes's case as to the Federal defendants be transferred to

the Court of Federal Claims.  JA31-32.

Estes filed a transfer complaint in the Court of Federal Claims on

October 17, 2011.  JA13.  The complaint contained three counts.  In Count One,

titled "Payment of Interstate Freight Charges," Estes asserted entitlement to

compensation under a statute, 49 U.S.C. § 13706.  JA15 (Compl. ¶¶ 17-18).  As

part of Count One, Estes alleged that "[p]ursuant to the bill of lading, [ ] Salem is

directly liable to Plaintiff for freight charges for loads brokered by Salem for which

Plaintiff's invoices remain unpaid."  *Id.* (Compl. ¶ 16).

Count Two of the complaint, an "Alternative Claim for Relief based on

Agency of Salem," asserted that "Salem acted on behalf of MCX as an agent of a

disclosed principal and bound MCX to all agreements entered into by Salem."

4

JA16 (Compl. ¶ 22). Finally, the third count of the complaint, an "Alternative Claim based on the United States as Beneficial Owner of the Freight," alleged that "MCX, as beneficial owner of the freight, is liable for payment of freight charges." *Id.* (Compl. ¶ 25).

The complaint that Estes filed in the Court of Federal Claims made no allegation of direct privity between Estes and MCCS. We moved to dismiss under Rule 12(b)(1) and 12(b)(6) for lack of jurisdiction and failure to state a claim because Estes was not in privity of contract with the United States and because 49 U.S.C. § 13706 is not a money mandating statute for purposes of jurisdiction under the Tucker Act, 28 U.S.C. § 1491. JA18. In its opposition to the motion to dismiss, Estes argued (1) that bills of lading signed by Estes and the shipper evidenced privity of contract between Estes and the Government, JA128, and (2) that deemed privity could be established under the theory that Salem acted as a purchasing agent for the Government, JA130. Although Estes did not contend in its opposition brief below that 49 U.S.C. § 13706 is money mandating, or even mention that statute, Estes did not agree at oral argument that it had abandoned the argument. JA238-39.

On January 15, 2013, the Court of Federal Claims granted our motion under Rule 12(b)(1) and dismissed the complaint for lack of jurisdiction. *Estes Express Lines*, 108 Fed. Cl. at 422. The trial court found that, "[c]ontrary to plaintiff's

5

claims, there was no direct privity of contract between it and the United States.  It was Salem, and not Estes Express, that had a contractual relationship with defendant; Estes Express' contractual relationship was with Salem only, as a subcontractor."  *Id.* at 421.  The trial court also rejected Estes's contention that deemed privity could be established through agency of Salem.  *Id.* ("the contract between Salem and MCX thoroughly rebuffs the notion that such an agency relationship existed here, as it flatly indicated that Salem 'shall not represent itself to be an agent or representative of MR, MCCS or any other agency or instrumentality of the United States.'").  Finally, the trial court also determined that 49 U.S.C. § 13706 did not independently provide jurisdiction for it to entertain Estes's complaint.  *Id.* at 422.  Estes's appeal to this Court followed.  JA11.

## SUMMARY OF ARGUMENT

The decision of the Court of Federal Claims dismissing the complaint for lack of jurisdiction should be affirmed.  The United States has not consented to be sued regarding a contract by subcontractors lacking privity of contract with the United States, such as Estes.  *See Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984).

To establish deemed privity under an agency theory, a plaintiff must show, among other elements, that a purchasing-agent relationship was created between the Government and prime contractor by clear contractual consent.  *See United*

6

*States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1551 (Fed. Cir. 1983).  In this case, the contract between MCCS and Salem expressly provides that Salem could not represent itself as an agent of the Government.  JA81.

Finally, the statutory provision that Estes relies upon, 49 U.S.C. § 13706, cannot serve as a basis for jurisdiction under the Tucker Act, as the Court of Federal Claims has consistently concluded in every case in which it has considered the question.  Because Estes cannot identify a source of substantive law mandating the compensation it seeks, the trial court properly dismissed the complaint.  This Court should affirm.

## ARGUMENT

## I.    Standard Of Review

This Court reviews de novo the decision of the Court of Federal Claims to dismiss for lack of jurisdiction.  *See M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010).  The plaintiff "bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).  If a plaintiff's "allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof."  *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936).

Undisputed factual allegations contained in the complaint must be treated as

true.  *See Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).  However, in resolving disputes regarding jurisdictional facts, a trial court may look beyond the pleadings and inquire into the jurisdictional facts that are disputed.  *See Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991).  Findings of fact by the trial court in that regard are reviewed for clear error.  *See id.*

## II.     The Jurisdiction Of The Court Of Federal Claims

The jurisdiction of the Court of Federal Claims to entertain suits against the United States is limited.  *See United States v. Sherwood*, 312 U.S. 584, 587-88 (1941).  "The United States, as sovereign, is immune from suit save as it consents to be sued."  *Id.* at 586.

The Tucker Act, 28 U.S.C. § 1491, "authorizes certain actions for monetary relief against the United States to be brought in the Court of Federal Claims and waives the government's sovereign immunity for those actions."  *Metz v. United States*, 466 F.3d 991, 995 (Fed. Cir. 2006).  Specifically, the Tucker Act confers "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).

However, the "Tucker Act itself does not create a substantive cause of

action; in order to come within the jurisdictional reach and the waiver of the

Tucker Act, a plaintiff must identify a separate source of substantive law that

creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172

(Fed. Cir. 2005). Thus, to recover damages against the United States, a plaintiff

must establish that a "money-mandating constitutional provision, statute or

regulation that has been violated, or an express or implied contract with the United

States" creates a right to the damages sought. *Loveladies Harbor, Inc. v. United

States*, 27 F.3d 1545, 1554 (Fed. Cir. 1994).

## III.    Estes Cannot Establish Privity Of Contract With The United States

Estes first argues that the trial court erred in finding that the bills of lading it

offered—which were signed not by MCCS but rather by Estes, as the carrier, and

by a shipper named MJ Soffe Company, JA138, 140, 142, 144, 146—do not

evidence privity of contract between Estes and the Government. Appellant's Br. 9.

"To have standing to sue the sovereign on a contract claim, a plaintiff must

be in privity of contract with the United States." *Anderson v. United States*, 344

F.3d 1343, 1351 (Fed. Cir. 2003).[1] To demonstrate privity of contract with the

Government, "the contract must be between the plaintiff and the Government."

*Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998) (quoting

[1] Limited exceptions have been recognized for third-party beneficiaries. *See
Sullivan v. United States*, 625 F.3d 1378, 1380 (Fed. Cir. 2010). Estes cannot avail
itself of such exceptions because it has not alleged, and could not establish, that a
contract with the United States expressed an intention to benefit Estes. *See id.*

9

*Ransom v. United States,* 900 F.2d 242, 244 (Fed. Cir. 1990)).  To establish the existence of a contract with the Government, four elements must be alleged and ultimately proven: "(1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States in contract."  *Anderson*, 344 F.3d at 1353.  The first element, mutuality of intent, requires "a plaintiff [to] show, by objective evidence, the existence of an offer and a reciprocal acceptance."  *Id.*

Estes's complaint, JA13-17, does not include "a non-frivolous allegation of a contract with the government."  *See Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011).  Nor does Estes suggest in its complaint that any of the above elements of a Government contract could be proven here.  Because the complaint does not include allegations that, if established, would demonstrate privity of contract with the United States, it is not sufficient to invoke the contract jurisdiction of the Court of Federal Claims.  *See DaimlerChrysler Corp. v. United States*, 442 F.3d 1313, 1318 (Fed. Cir. 2006) ("a party invoking federal court jurisdiction must, in the initial pleading, allege sufficient facts to establish the court's jurisdiction"); *Thompson v. United States*, 103 Fed. Cl. 16, 21 (2011) ("In order to invoke jurisdiction based upon an express or implied-in-fact contract, a plaintiff must allege all the requisite elements of a contract with the United States.")

10

Estes's complaint not only fails to allege a contract with the Government, but it also includes allegations demonstrating that it did not have a contract with the Government.  According to its own complaint, Estes was a subcontractor to Salem:

> Upon information and belief, MCX contracted with a freight broker, Salem Logistics ('Salem') to coordinate its logistics and communicate with motor carriers to carry the products and goods of various shippers to MCX locations around the country.  At various times thereafter, including between June 2008 through February 2009, Salem contracted with Plaintiff to carry specified loads for MCX.

JA 13-14 (Compl. ¶ 5).

Other allegations in Estes's complaint also indicate that its decision not to allege direct privity with the United States was not inadvertent.  In Count One, Estes alleged that "[p]ursuant to the bill of lading, [ ] Salem is directly liable to Plaintiff for freight charges for loads brokered by Salem for which Plaintiff's invoices remain unpaid."  JA15 (Compl. ¶ 16).  In the next paragraph, Estes alleged that MCX is also liable, but under a statute, 49 U.S.C. § 13706, not the bill of lading.  *Id.* (Compl. ¶ 17).  Thus, the complaint reflects a conscious choice not to allege that the Government was liable under the bills of lading.

In an exhibit to its response to our motion to dismiss, Estes presented five

11

bills of lading.  JA138, 140, 142, 144, 146.[2]  Estes argues that these bills of lading

evidence privity of contract with the Government, even though they are not signed

by anyone from the Government.  *Id.*; JA250.  Rather, they are signed by Estes, as

the carrier, and a private shipper, MJ Soffe Company.  An instrument between

Estes and another private company cannot demonstrate intent on the part of the

Government to enter into a contract with Estes.  As the trial court observed,

"[n]othing in the bills of lading that plaintiff has introduced into the record

contradicts this notion.  Rather, the descriptions and signatories on those bills are

consistent with the notion that Salem, and not MCX or MCCS, had a carrier

contract with Estes Express."  *Estes Express Lines*, 108 Fed. Cl. at 421.  The

arguments Estes asserts were rejected by the Court of Federal Claims not only in

this case, but also in another case brought by a different Salem subcontractor

regarding other freight moved under the same contract between MCCS and Salem.

*See YRC, Inc. v. United States*, 104 Fed. Cl. 360, 367 (Fed. Cl. 2010) ("The SBLs

and billing invoices reference 'Marine Corps Exchange c/o Salem Logistics, Inc.'

or 'MCX c/o Salem Logistics, Inc.' as the party to be billed, but do not establish an

intent to contract."); JA255-56.

     Estes further argues that MCX was a party to the bills of lading because

---

[2] Each of the bills of lading was presented together with two other documents: an original freight bill and a delivery receipt.  JA221-22 (describing the shipping documents attached to Estes's brief below).

MCCS's contract with Salem specified that "[a]ll shipments that are F.O.B. origin must be shipped on a third party collect bill of lading." JA99. Despite Estes's arguments, this requirement, along with the terms included in the bills of lading that were generated consistent with the instructions contained in the contract, actually reinforce the observation that MCCS was not a party to the bills of lading. Moreover, the same instrument that specifies that this information should appear on the bills of lading—the contract between Salem and MCCS—also expressly provides that Salem would pay its carriers and MCCS would pay Salem. JA59-60.

When similar cases have been brought in the Court of Federal Claims, they have routinely been dismissed for lack of privity. *See Cent. Freight Lines, Inc. v. United States*, 87 Fed. Cl. 104, 108-09 (2009); *Cent. Transp. Int'l, Inc. v. United States*, 63 Fed. Cl. 336, 340 (2004) ("In short, Plaintiff has not alleged any set of facts which, if true, would establish its privity of contract with the Government."); *see also YRC, Inc.*, 104 Fed. Cl. at 366 (granting summary judgment); *Fikse & Co. v. United States*, 23 Cl. Ct. 200, 203-05 (1991) (granting summary judgment).

The trial court rightly rejected Estes's attempts to distinguish *Central Freight Lines, Inc. v. United States*, 87 Fed. Cl. 104 (2009). According to Estes, in *Central Freight Lines, Inc.*, "[t]he Court of Federal Claims held that there was no privity of contract between the carrier and the Government because there were dual bills of lading, and the plaintiff was not the carrier on the bills of lading issued by

13

the Government." Appellant's Br. 10. Estes misinterprets the court's ruling in that case.

In *Central Freight Lines*, the Court of Federal Claims rejected the same argument that Estes is now asserting. Central Freight asserted that "[a] contract between the government and the carrier forms each time the government accepts the carrier's transportation services with the carrier's bill of lading." *Central Freight Lines, Inc.*, 87 Fed. Cl. at 108. While acknowledging that a bill of lading to which the Government is a party, known as a Government bill of lading, or GBL, can establish privity with the Government, we explained in *Central Freight Lines, Inc.* that straight bills of lading between two private parties cannot demonstrate a contract with the Government. *Id.* at 109. The court agreed. *Id.* ("While the plaintiff has supplied this court with over 1,300 SBLs between itself and Dispatch, the SBLs fail to establish a contractual relationship between the government and Central Freight.").

Estes's complaint does not allege, and Estes has no basis to allege, direct privity of contract with the United States.

## IV.  Salem Did Not Act As The Government's Purchasing Agent

The trial court also correctly rejected Estes's assertion that the Government established a purchasing-agent relationship with Salem, such that Estes may demonstrate deemed privity as a result of its dealings with Salem. JA7. This

14

Court has recognized that, in rare cases, privity of contract may be established under an agency or deemed privity theory. *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1551 (Fed. Cir. 1983). To establish deemed privity, however, a plaintiff must show that (1) the prime contractor was "acting as a *purchasing* agent for the government, (2) the agency relationship between the government and the prime contractor was established by clear contractual consent, and (3) the contract stated that the government would be directly liable to the vendors for the purchase price." *Johnson Controls, Inc.*, 713 F.2d at 1551; *see also Cent. Transp. Int'l, Inc.*, 63 Fed. Cl. at 339 n.8.

The trial court correctly determined that these factors cannot be demonstrated here. Salem was not acting as a purchasing agent of the United States, as demonstrated by the express and unambiguous terms of the contract between Salem and MCX. JA49 ("Salem was not an agent or representative of MR, MCCS or any other agency or instrumentality of the United States as specifically stated in Clause I-8 of the contract."), JA81 (Clause I-8).

Moreover, Estes cannot make a non-frivolous allegation that an agency relationship between Salem and the Government was established by clear contractual consent when the contract expressly provides that Salem "shall not represent itself to be an agent or representative of MR, MCCS or any other agency or instrumentality of the United States." JA81.

15

Finally, the contract does not state that the Government would be directly liable to the vendors for the purchase price. To the contrary, the contract required Salem "shall make payment to the commercial transportation carriers for services rendered to move products covered by MCCS/MCX PO or DO, in accordance with terms and conditions negotiated between the two parties." JA59-60.

Estes argues that it "properly assumed that Salem had authority to negotiate for the Government as its agent." Appellant's Br. 13. None of the cases Estes cites in support of this proposition involves the Government. Appellant's Br. 12-13. In making this argument, Estes fails to appreciate that apparent authority is insufficient to bind the United States. *See Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947) ("anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority"); *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989) ("apparent authority will not suffice to hold the government bound by the acts of its agents").

In an effort to persuade the Court to disregard the express terms of the contract between Salem and MCCS on the basis that the terms are disadvantageous to Estes's case, Estes quotes from a 1949 decision of the Court of Claims, *Continental Illinois National Bank & Trust Co. v. United States*, 81 F. Supp. 596, 598 (Ct. Cl. 1949). Appellant's Br. 13. While this case does offer an anachronistic

16

metaphor concerning a truant boy's tortious conversion of chickens with impunity, the case does not actually support Estes's view of the law relevant to this case.

The Court of Claims' holding in *Continental Illinois National Bank & Trust* was that, consistent with *Severin v. United States*, 99 Ct. Cl. 435 (1943), the contractor could not recover alleged losses of subcontractors where the contractor was not itself liable to those subcontractors for such losses. 81 F. Supp. at 597. In analyzing one of the underpinnings of the *Severin* doctrine – subcontractors' inability to sue the Government given their lack of privity with the Government – the Court of Claims concluded: "While the quoted provisions of the contract specifications come near to creating a privity of contract between the Government and the subcontractors, they are in our judgment not sufficient to do so and this court is therefore without jurisdiction under the Tucker Act, 28 U.S.C.A. § 1491 et seq., to consider the claims brought by the plaintiff for the benefit of the subcontractors." *Id.* at 598.

This Court's decision in *Johnson Controls*, which Estes seems to acknowledge controls here, Appellant's Br. 11, itself provides a thorough explanation as to why the dicta found in *Continental Illinois National Bank & Trust* cannot be applied to disregard the privity-of-contract limitation on the Tucker Act's waiver of sovereign immunity. *Johnson Controls, Inc.*, 713 F.2d at 1551-53. In *Johnson Controls*, the Court explained:

17

> The dicta of the Court of Claims in [*Continental Illinois*] certainly implied that privity between the government and a subcontractor could be found if the contract provisions circumvent the independent authority of the prime contractor. But the court did not actually find privity. We know of no case, other than the board's own holding in *Bristol,* where privity has been found based upon this theory.
>
> The *Continental Illinois* case also involved an important factor not present in this case—the application of the *Severin* doctrine.

*Id.* at 1551-52.

In this case, the Government exercised no control over the relationship between Salem and its subcontractors, outside of that related to flow-down clauses contained in the contract between Salem and the MCCS.  JA77 ("The MCCS/MCX shall not exercise any supervision or control over the Contractor's employees performing services under this Contract.").  The Government did not have a role in Salem's selection of Estes as a subcontractor.  The complaint does not allege that the Government exercised control over Salem's relationship with its subcontractors.

The express terms of the contract between Salem and MCCS establish that the *Johnson Controls* elements cannot be met.

## V.    49 U.S.C. § 13706 Does Not Provide A Basis For Jurisdiction

In the absence of privity of contract with the United States, Estes must show that a specific provision of Federal law entitles Estes to the payment it seeks and

18

that the United States has waived sovereign immunity for such a claim. *See United States v. Mitchell*, 463 U.S. 206, 216 (1983). Estes attempts to rely upon 49 U.S.C. § 13706, a provision of the Interstate Commerce Act (ICA). However, § 13706 cannot be paired with the Tucker Act's waiver of sovereign immunity because the ICA contains its own remedial scheme, a scheme that offers no waiver of sovereign immunity for motor carriers lacking privity of contract with the Government. But even if the Tucker Act could constitute a waiver of sovereign immunity for purposes of § 13706, that statutory provision cannot fairly be interpreted as money mandating because it does not require the payments Estes seeks.

## A.    Provisions Of The ICA Cannot Be Paired With The Tucker Act's Waiver of Sovereign Immunity

When a statute contains its own self-executing remedial scheme, a litigant cannot "mix and match" some of that statute's provisions with the Tucker Act's waiver of sovereign immunity. *See United States v. Bormes*, 133 S. Ct. 12, 19 (2012). If a statute contains its own "detailed remedial scheme, only *its own* text can determine whether the damages liability Congress crafted extends to the Federal Government." *Id.* Thus, under *Bormes*, when determining whether a particular statutory provision can be considered money mandating for purposes of establishing Tucker Act jurisdiction, the analysis must proceed in two steps.

First, the Court must determine whether the statute at issue "contains its own

19

self-executing remedial scheme." *Id.* at 17.  If it does, "we look only to that statute to determine whether Congress intended to subject the United States to damages liability," *id.*, and any action brought against the United States must be brought in accordance with the statute's own remedial scheme.  Thus, if a statute contains its own remedial scheme, but does not itself waive sovereign immunity, the Tucker Act cannot supply such a waiver.  *See id.*

If, on the other hand, the statute does not contain its own remedial scheme, the second step of the analysis requires the Court to use the traditional "fair interpretation" rule to determine whether the statute at issue falls within the Tucker Act's waiver of sovereign immunity.  *See id.* at 20.  That is, for "a statute that imposes an obligation but does not provide the elements of a cause of action," the Court must determine whether it "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained."  *Id.* (quoting *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003)).

In this case, the ICA does contain its own self-executing remedial scheme. *See Inter-Coastal Xpress, Inc. v. United States*, 296 F.3d 1357, 1361-62 (Fed. Cir. 2002) ("The ICA also provides for a federal 'civil action to recover charges for transportation or service provided by [a common] carrier,' 49 U.S.C. § 14705(a), including 'transportation for the United States Government,' 49 U.S.C. § 14705(f)."); *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1016 (Fed. Cir.

1995) ("In Section 322 of the Transportation Act of 1940 [which amended the

ICA], as amended, 31 U.S.C. § 3726, Congress set up a system for paying carriers

for providing those services and a mechanism for resolving disputes arising from

those transactions.").

However, although the ICA's remedial scheme waives sovereign immunity

for certain actions, it does not mandate compensation or waive sovereign immunity

for any action that might be brought against the Government by a motor carrier.

Rather, as illustrated by *Inter-Coastal Xpress, Inc.*, the ICA's waiver of sovereign

immunity pertains to transportation payment disputes between the Government and

those with whom the Government has a contract.  "Congress intended to have the

ICA govern all actions seeking the payment of money for the charges *owed on*

*contracts* for transportation services between common carriers and the

government."  *Inter-Coastal Xpress, Inc.*, 296 F.3d at 1366 (emphasis added); *id.*

at 1369 ("the ICA governs all claims that seek payment for the charges owed on

contracts for transportation services, regardless of a contract's particular form, *e.g.,*

tender agreement versus a GBL" (emphasis omitted)); *see also* 41 C.F.R. § 102-

117.30 (prescribing multiple methods for Government agencies to procure

transportation services, all of which result in a contractual agreement).

Thus, the ICA itself waives sovereign immunity for contract disputes with

motor carriers, but it does not waive sovereign immunity for motor carriers to

21

bring any action against the Government.  No provision of the ICA or any other statute expresses the consent of the United States to be sued by a carrier with which the United States had no contractual agreement, simply because that carrier transported goods to or from a Government entity or instrumentality.[3]

Accordingly, the Court of Federal Claims, and its predecessor, have recognized that section "13706 does not 'dispense with the necessity of establishing privity of contract with the Government in order to establish jurisdiction under the Tucker Act.'"  *Cent. Freight Lines, Inc.*, 87 Fed. Cl. at 108-09 (quoting *Cent. Transp. Int'l, Inc.*, 63 Fed. Cl. at 340 n.10); *Fikse & Co. v. United States*, 23 Cl. Ct. 200, 203-05 (1991).  Neither § 13706 nor any other provision of the ICA provides jurisdiction for the Court of Federal Claims to entertain an action brought by a motor carrier with whom the Government did not have a contract.

## B.     49 U.S.C. § 13706 Is Not Money Mandating

Even if 49 U.S.C. § 13706 were not part of a statute containing its own remedial scheme, it still could not be interpreted as a money mandating statute permitting suit under the Tucker Act's waiver of sovereign immunity.  A statute is money mandating if it "can fairly be interpreted as mandating compensation by the

---

[3] Estes itself seems to acknowledge that the United States cannot be held liable simply because it was the consignee of the freight Estes transported.  Appellant's Br. 9 n.1 ("Estes does not seek to hold the Government liable merely as consignee because here it was the party purchasing transport and the owner of the freight").

Federal Government for the damage sustained." *Bormes*, 133 S. Ct. at 20 (quoting *White Mountain Apache Tribe*, 537 U.S. at 472 (2003)). That test is satisfied only when "the failure to perform an obligation undoubtedly imposed on the Federal Government creates a right to monetary relief." *Id.*

Money mandating statutes or regulations are those that "command[] payment of money," such that the payment sought is "required by law." *See Spagnola v. Stockman*, 732 F.2d 908, 912 (Fed. Cir. 1984). Thus, money mandating provisions often use words like "shall" in reference to Government officials. *See Greenlee Cnty., Ariz. v. United States*, 487 F.3d 871, 877 (Fed. Cir. 2007). Statutes that impose civil liability on a "person" generally, without expressly including the sovereign, do not waive sovereign immunity. *See Blueport Co. v. United States*, 533 F.3d 1374, 1383 (Fed. Cir. 2008).

The plaintiff must also be within the class of plaintiffs entitled to recover under the statute. *Jan's Helicopter Serv. v. FAA*, 525 F.3d 1299, 1307 (Fed. Cir. 2008). If the plaintiff cannot demonstrate that it "is within the class of plaintiffs entitled to recover under the statute if the elements of a cause of action are established," *Greenlee Cnty., Ariz.*, 487 F.3d at 876, the action must be dismissed for lack of jurisdiction.

23

In this case, 49 U.S.C. § 13706 is not money mandating.  It is plainly inapplicable to the circumstances described in the complaint.  Section 13706 provides:

> (a) Liability of consignee.  Liability for payment of rates for transportation for a shipment of property by a shipper or consignor to a consignee other than the shipper or consignor, is determined under this section when the transportation is provided by motor carrier under this part.  When the shipper or consignor instructs the carrier transporting the property to deliver it to a consignee that is an agent only, not having beneficial title to the property, the consignee is liable for rates billed at the time of delivery for which the consignee is otherwise liable, but not for additional rates that may be found to be due after delivery if the consignee gives written notice to the delivering carrier before delivery of the property—
>
> > (1) of the agency and absence of beneficial title; and
> >
> > (2) of the name and address of the beneficial owner of the property if it is reconsigned or diverted to a place other than the place specified in the original bill of lading.
>
> (b) Liability of beneficial owner.  When the consignee is liable only for rates billed at the time of delivery under subsection (a), the shipper or consignor, or, if the property is reconsigned or diverted, the beneficial owner is liable for those additional rates regardless of the bill of the lading or contract under which the property was transported.  The beneficial owner is liable for all rates when the property is reconsigned or diverted by an agent but is refused or abandoned at its ultimate destination if the agent gave the carrier in the reconsignment or diversion order a notice of agency

24

> and the name and address of the beneficial owner. A consignee giving the carrier erroneous information about the identity of the beneficial owner of the property is liable for the additional rates.

49 U.S.C. § 13706. Estes has never specifically identified which language within § 13706 it believes commands the United States to pay money to it in the present circumstances.

After quoting this language in its brief, Estes then concludes, without explanation, that "[t]his language, it would seem, creates a money mandating obligation for payment of the freight charges in this case as in cases involving private parties," Appellant's Br. 15, and then requests that the Court "find that § 13706 creates the independent obligation of the MCX to pay the freight charges," *id.* at 16. But the plain language of § 13706 imposes no such obligation. The two cases Estes cites do not support the proposition that § 13706 creates a money mandating obligation. Rather, both cases indicate that liabilities and obligations are determined by the terms of the bill of lading—that is, by contract, not statute. *S. Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 342 (1982) ("bill of lading is the basic transportation contract between the shipper-consignor and the carrier"); *Oak Harbor Freight Lines, Inc. v. Sears Roebuck, & Co.*, 513 F.3d 949, 954 (9th Cir. 2008) ("a bill of lading is the basic transportation contract between the shipper/consignor and the carrier . . . . [But] default liability provisions can be modified by contract so as to make 'the liability allocation presumptions on the bill

25

of lading . . . unnecessary").

Nothing in § 13706 can be interpreted as an unequivocal waiver of sovereign immunity by the Federal Government requiring the payment Estes now seeks in the absence of a contract between Estes and the Government.  Subsection (a) provides that, under certain conditions, the liability of a "consignee that is an agent only, not having beneficial title to the property," is limited to the rates "for which the consignee is otherwise liable, but not for additional rates."  49 U.S.C. § 13706(a).  In this case, Estes's complaint expressly alleges that "MCX was the beneficial title holder of the freight in transit," JA16 (Compl. ¶ 24),[4] meaning that MCX cannot be a "consignee that is an agent only, not having beneficial title to the property," § 13706(a).

Subsection (b), which relates to liability when freight is reconsigned or diverted, or if erroneous information is given about the beneficial owner, is also unrelated to any of the allegations in the complaint, which does not speak of reconsignments, diversions, or erroneous information about the beneficial owner. To the extent that Estes invites the Court to draw some negative implication from the language § 13706, such an approach would run contrary to the rule that waivers of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4 (1969).

---

[4] Estes reiterates this contention in its brief.  Appellant's Br. 16 ("MCX was the owner of the freight").

26

Moreover, the history of § 13706 further demonstrates that it has never been intended as a waiver of sovereign immunity. The statutory language now found in § 13706 can be traced back to amendments to the ICA made in 1927. Act of Mar. 4, 1927, ch. 510, § 1, 44 Stat. 1446, 1447. In those 1927 amendments, Congress added the following provisions establishing *non-liability* in certain circumstances:

> Where carriers by railroad are instructed by a shipper or consignor to deliver property transported by such carriers to a consignee other than the shipper or consignor, such consignee *shall not be legally liable* for transportation charges in respect of the transportation of such property (beyond those billed against him at the time of delivery for which he is otherwise liable) which may be found to be due after the property has been delivered to him if the consignee (a) is an agent only and has no beneficial title in the property, and (b) prior to delivery of the property has notified the delivering carrier in writing of the fact of such agency and absence of beneficial title, and, in the case of a shipment reconsigned or diverted to a point other than that specified in the original bill of lading, has also notified the delivering carrier in writing of the name and address of the beneficial owner of the property. In such cases the shipper or consignor, or, in the case of a shipment so reconsigned or diverted, the beneficial owner, shall be liable for such additional charges, irrespective of any provisions to the contrary in the bill of lading or in the contract under which the shipment was made. An action for the enforcement of such liability may be begun within the period provided in paragraph (3) of section 16 or before the expiration of six months after final judgment against the carrier in an action against the consignee begun within the period provided in paragraph (3) of section 16. *If the consignee has given to the carrier erroneous information* as to who the beneficial owner is, such consignee shall himself be liable for such additional charges, notwithstanding the

> foregoing provisions of the paragraph. An action for the enforcement of such liability may be begun within the period provided in paragraph (3) of section 16 or before the expiration of six months after final judgment against the carrier in an action against the beneficial owner named by the consignee begun within the period provided in paragraph (3) of section 16.

*Id.* (emphasis added). Thus, this provision was originally enacted—and has always been—not to create liabilities but to limit them.

More broadly, "[t]he principal purpose of section 10744 [now § 13706 for transportation by motor carrier][5] as well as the entire Interstate Commerce Act unquestionably was to eliminate all forms of rate discrimination on interstate shipments." *In re Roll Form Products, Inc.*, 662 F.2d 150, 153 (2d Cir. 1981). The ICA "was not intended to 'fashion a sword' to insure collection by carriers of freight charges. Nor . . . was [it] intended to impose an absolute liability upon consignees for freight charges. Its sole purpose was 'to secure equality of rates to all and to destroy favoritism.'" *Id.* at 154.

In short, 49 U.S.C. § 13706 does not impose any obligation for the United States to pay Estes in the absence of a contract requiring it to do so. Therefore, it does not offer any alternative jurisdictional avenue. Estes was not in privity of

---

[5] These provisions, which were originally codified within 49 U.S.C. § 3, were moved to 49 U.S.C. § 10744 in 1978, when Title 49 was enacted into positive law. Act of Oct. 17, 1978, Pub. L. No. 95-473, 92 Stat. 1337. In 1995, the provisions related to motor carrier transportation were separated and moved to 49 U.S.C. § 13706. ICC Termination Act of 1995, Pub. L. 104-88 § 103, 109 Stat. 803, 872-73.

28

contract with the United States.  The trial court properly dismissed Estes's

complaint for lack of jurisdiction.

## **CONCLUSION**

The trial court's dismissal for lack of jurisdiction should be affirmed.

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Martin F. Hockey, Jr.
MARTIN F. HOCKEY, Jr.
Assistant Director

/s/ Daniel B. Volk
DANIEL B. VOLK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 353-7955

May 31, 2013                    Attorneys for Appellee

## CERTIFICATE OF COMPLIANCE PURSUANT TO RULE 32(a)(7)(B)

Pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure,

counsel for appellee, the United States, certifies that this brief complies with the

Court's type-volume limitation rules.  According to the word count calculated by

the word processing system with which this brief was prepared, the brief contains a

total of 7,928 words.



_____/s/ Daniel B. Volk_____

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on May 31, 2013, a copy of the foregoing BRIEF OF APPELLEE, UNITED STATES was filed electronically.

___X___ This filing was served electronically to all parties by operation of the Court's electronic filing system.

_____/s/ Daniel B. Volk_____

_____ A copy of this filing was served via:

    _____ hand delivery

    _____ mail

    _____ third-party commercial carrier for delivery within 3 days

    _____ electronic means, with the written consent of the party being served

To the following address:

_____